IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

06 APR 24  AM 10: 13

CLERK-ALBUQUERQUE

THE AMERICAN CIVIL LIBERTIES
UNION OF NEW MEXICO; THE
LEAGUE OF WOMEN VOTERS OF ALBUQUERQUE/
BERNALILLO COUNTY, INC.; SAGE COUNCIL;
NEW MEXICO COALITION TO END HOMELESSNESS;
ANNE KASS, ALEXANDRA KAZARAS
and BARBARA GROTHUS,

          Plaintiffs,

v.                        No.  CV 05-1136 MCA/WDS

MILLIE U. SANTILLANES, ALBUQUERQUE
CITY CLERK,

          Defendant.

### SECOND AMENDED COMLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

    COME NOW Plaintiffs, by and through their undersigned counsel, and for their

Second Amended Complaint state:

### THE PARTIES

    1.  Plaintiff the American Civil Liberties Union of New Mexico ("ACLUNM") is

a non-profit membership organization with approximately 5,000 members in New

Mexico, of whom 1,000 members, including Hispanic members, reside in Albuquerque,

New Mexico. Among its other many interests, the ACLUNM and its members work to

protect the constitutional rights of American citizens, including equal protection of the

law in exercising the fundamental right to vote.  The ACLUNM has standing to vindicate



the interests of its members, including Hispanics, who are qualified and registered to vote in municipal elections in Albuquerque, New Mexico, and whose rights, status or other legal relations are or will be affected by the Defendants' actions.

2. Plaintiff the League of Women Voters of Albuquerque/Bernalillo County, Inc. ("the League") is a non-partisan New Mexico not-for-profit membership organization founded in 1947. The League's mission is to encourage the informed and active participation by citizens in government and to influence public policy through education and advocacy. The right of every citizen to vote has been a basic League principle since its origin. The League's principles include the protection of all citizens' equal right to vote and the education of voters about voting rights and procedures. The League has standing to vindicate the interests of its hundreds of members who are qualified and registered voters in Albuquerque. and whose rights, status or other legal relations are or will be affected by the Defendant's actions.

3. Plaintiff the SAGE Council is a non-profit membership organization whose mission includes protecting and advancing the voting rights of Native Americans in the City of Albuquerque. SAGE Council works extensively to register and encourage voting by Native Americans in all elections, including Albuquerque municipal elections, and also to protect the equal rights of Native Americans to vote and participate in elections. SAGE Council is the founder and the leading organization behind the Native American Voters Alliance, a coalition dedicated to increasing the participation of Native Americans in elections. SAGE Council has standing to vindicate the interests of its hundreds of Native American members who are qualified and registered voters in Albuquerque, and

2

whose rights, status or other legal relations are or will be affected by the Defendant's actions.

4. Plaintiff the New Mexico Coalition to End Homelessness ("Coalition to End Homelessness") is a non-profit membership organization that has as members individuals who are homeless and approximately 60 organizations and agencies which serve, represent and advocate for homeless persons. Several of those organizations themselves are membership organizations with homeless individuals as members. Among its other interests, the Coalition to End Homelessness and its members works to provide voter registration and identification documents to homeless individuals, encourage and facilitate their participation in elections, and take other actions to protect the constitutional rights of their members and homeless clients as American citizens, including specifically the fundamental and equal right to vote. The Coalition to End Homelessness has standing to vindicate the interests of its members who are qualified and registered voters in Albuquerque, whose rights, status or other legal relations are or will be affected by the Defendant's actions.

5. The ACLUNM, the League, SAGE Council and the Coalition to End Homelessness are organizations composed of members who would have standing to sue in their individual right for the allegations set forth in this First Amended Complaint. Further, the interests which the ACLUNM, the League, SAGE Council and the Coalition to End Homelessness and its members seek to protect are germane to the purpose of each of the organizational members, and neither the claims nor the relief sought in this action require participation by the individual members of the organizational plaintiffs.

6. In addition to the organizational standing described in the preceding paragraph, the Coalition to End Homelessness also has third party (*jus tertii*) standing to assert and vindicate the legal interests of its homeless clients, and the homeless clients of its separate organizational and agency members.

A. The Coalition to End Homeless, directly as well as through its member organizations and agencies, has a close, extant and ongoing relationship with homeless individuals whose rights, status and interests are or will be adversely affected by Defendant's actions. Efforts by the Coalition to End Homelessness and its member organizations and agencies to provide homeless clients with identification, as well as provide voter registration and voting rights protection, are ongoing and a constant aspect of their services to the homeless.

B. The homeless clients served by the Coalition to End Homelessness face substantial hindrances in asserting the own constitutional and statutory rights raised herein on their behalf. These hindrances arise from the facts of life as a homeless person: they have no secure place for their possessions and identification documents; identification documents are frequently and repeatedly lost or destroyed when their camps are dismantled or vandalized; because the homeless are extremely vulnerable to crime, identification documents are frequently stolen; the homeless face a chronic problem of having identification documents confiscated by law enforcement employees; acquisition and replacement of identification documents is extremely difficult for homeless individuals and takes prolonged and unpredictable periods of time; homeless individuals lack the financial resources to purchase photographic identification; and,

4

homeless individuals lack the personal skills, knowledge and resources to bring and litigate to conclusion a case such as this. As further explained below, it will be virtually impossible for the vast majority of homeless individuals who lack the specified forms of identification required by the law challenged by this action to cure that condition, and also impossible for them to cast their vote and have it counted. Only by the Coalition to End Homelessness herein acting on behalf of its homeless clients can the rights of the homeless to equal protection of the law in the exercise of the fundamental right to vote be asserted and protected.

7. Plaintiffs Anne Kass, Alexandra Kazaras and Barbara Grothus are individuals and qualified registered voters residing in Albuquerque who choose not to vote by absentee ballot in municipal elections so that they may make a decision informed by the full course of the election campaign, and who object to being subject to increased burdens on the exercise of their right to vote because they choose to vote in the traditional manner, by going personally to the polls. Plaintiff Kazaras does not possess any of the forms of photographic identification required by the Amendment to the Albuquerque City Charter, as set forth in paragraph 17 below.

8. Defendant Millie U. Santillanes is the Clerk of the City of Albuquerque, New Mexico, and, pursuant to the New Mexico Municipal Election Code, NMSA § 3-8-7 (1978), is charged with administering municipal elections for the City of Albuquerque. Santillanes replaced the original Defendant Judy Chavez as City Clerk shortly after filing of this action and before the original complaint was served, and has been substituted as the Defendant in this First Amended Complaint.

5

9. Defendant is sued in her official capacity for declaratory and injunctive relief. At all times material hereto, Defendant has acted or will act under color of state law.

## JURISDICTION AND VENUE

10. This case arises under the Constitution and laws of the United States of America, as protected by 42 U.S.C. §§ 1971, 1973 and 1983.

11. The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 1971(d), 1973(f) and 1983 and also 28 U.S.C. §§ 1331, 1343(3) & (4) and 1367(a).

12. Pursuant to 28 U.S.C. §§ 2201 and 2102, this Court has jurisdiction to grant the requested declaratory and injunctive relief.

13. Venue lies in this district pursuant to 28 U.S.C. 1391(b) because the Defendants reside in this district and the matters complained of arose here.

## ALLEGATIONS COMMON TO ALL COUNTS

14. On October 4, 2005, the voters of the City of Albuquerque approved an amendment to the Election Code of the Albuquerque City Charter that requires all voters who vote in person in any municipal election to present at the polling place one of several specified mandatory forms of photographic personal identification. A complete and correct copy of the amendment is attached hereto as Exhibit A and incorporated herein by reference (hereinafter referred to as "Voter I.D. Amendment."). Upon information and belief, although it has been adopted as law by the City of Albuquerque, it has not yet been codified within the Election Code of the City Charter.

15. The Voter I.D. Amendment, while requiring the presentation of photographic personal identification for voters voting in person in municipal elections, does not impose

similar burdens, procedures and qualifications upon the right to vote of those persons who vote by absentee ballot. The City Charter as amended does not require absentee voters to present any proof of identification, including any form of photographic identification. Upon information and belief, the City Clerk has established a custom whereby she will send an application for an absentee ballot to anyone who requests one, even if the request is made by telephone. An absentee ballot application will be sent through the mail by the City Clerk so long as the applicant provides only their name, address and date of birth or the last four digits of their social security number on the application form. The absentee ballot may then be cast by mail without any further proof that the person completing the mail-in absentee ballot is in fact the person lawfully entitled to cast the vote.

16. The Voter I.D. Amendment states, in pertinent part:

"When a voter approaches the election polling place seeking to vote, the Voter must identify himself or herself audibly by name. The Municipal Election Clerk shall locate in the election rolls the name spoken and ask the individual seeking to vote for one current valid identification card containing the voter's name and photograph."

17. As to the meaning of a "current valid identification card," the Voter I.D Amendment, does not define "current" or "valid" but lists examples of documents that would be acceptable:

"Such photo identification card may include any card issued by a government agency, driver's license, student identification card, commercial transaction card such as a credit or debit card, insurance card, union card, a professional association card or the voter identification card issued by the City Clerk."

18. The "voter identification card issued by the City Clerk" can be obtained without charge if the voter presents themselves to the City Clerk and produces "two of the following identification documents that show the name and address of the voter: a state issued identification card, social security card, student identification card, library card, insurance card, selective service card, union card, professional association card, utility bill, bank statement, government check or a paycheck." If the voter is unable to present the required documentation, then the voter will be required to swear or affirm under penalty of perjury that he or she is registered to vote and the City Clerk is required to issue a "voter photo identification card upon confirmation with the County Clerk that such person is presently registered to vote."

19. In the event an individual appears at the election polling place without the required photo identification, they shall be allowed to vote on a provisional ballot,

> "but only if he or she swears or affirms under penalty of perjury in an affidavit provided by the City Clerk that he or she is registered voter listed on the voter registration rolls at the precinct at which he or she presented himself or herself to vote and provides his or her date of birth and the last four digits of his or her social security number."

The provisional ballot shall only be counted if, within the ten day canvassing period following the election the voter presents to the City Clerk one of the "photo identification cards" listed in the Voter I.D. Amendment, specifically one of those forms of photo identification listed above in paragraph 17.

<u>COUNT I</u>

Undue, Discriminatory Burden on the Fundamental Right to Vote
<u>In Violation of the Right to Equal Protection of the Law</u>

20. Plaintiffs incorporate herein by reference the allegations of paragraphs 1 through 19 as though fully restated herein.

21. The Voter I.D. Amendment imposes undue burdens on the fundamental right to vote that are neither justified by, nor necessary to promote a substantial and compelling state interest that was not already being adequately protected by existing criminal laws and election procedures, or which cannot be accomplished by other, less restrictive and discriminatory means.

22. The Voter I.D. Amendment discriminates unconstitutionally against persons who vote in person at the end of an election campaign. is overbroad and is not narrowly tailored to the goal of preventing voter fraud. which was the stated purpose for the Voter I.D. Amendment.

23. The Voter I.D. Amendment violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983, and thereby deprives clients of the Coalition to End Homelessness and the members of the ACLUNM, the League, SAGE Council, the Coalition to End Homelessness and individual Plaintiffs Kass, Kazaras and Grothus of their constitutional rights as United States citizens.

WHEREFORE Plaintiffs pray this Court to:

9

a. Declare the Voter I.D. Amendment to be unconstitutional, illegal, null and void, in whole or in part;

b. Enjoin Defendant, or persons acting under her supervision and direction, from implementing, administering and enforcing the Voter I.D. Amendment;

c. Award Plaintiffs their reasonable attorney fees under 42 U.S.C. §1988, costs and interest as allowed by law; and

d. Grant Plaintiffs such other and further relief to which they may be entitled and which is necessary to give full effect to the Court's order.

## COUNT II

Undue, Discriminatory Burden on the Fundamental Right to Vote
In Violation of the Right to Equal Protection of the Law—Unconstitutional Requirements
Demonstrating Affluence and Gender Discrimination

24. Plaintiffs incorporate herein by reference the allegations of paragraphs 1 through 23 as though fully restated herein.

25. Each of the specific forms of voter identification required by the Voter I.D. Amendment, listed in paragraph 17 *supra*, require the voter to have attained some level of personal affluence, or to have expended some sum of money:

A. "Card issued by a government agency": Upon information and belief, the only documents generally available to the public to meet this description are a passport or a New Mexico identity card, neither of which may be procured without paying a fee.

B. "Driver's license": In order to obtain a driver's license, the voter must have passed an examination demonstrating their knowledge of applicable driving codes, and then pay the required fee in order to keep the license "current" and "valid."

C. "Student identification card": In order to obtain such a "current" and "valid" photographic identification, a person must have been admitted to and paid admission or other tuition fees at an educational institution that issues photographic identifications to its students.

D. "Commercial transaction card such as a credit or debit card": In order to obtain such a form of photographic identification, one must possess sufficient credit or funds in order to qualify for either a credit or debit card.

E. "Insurance card": In order to obtain a "current" and "valid" insurance card, one must first purchase insurance, or qualify for insurance through employment, or be the beneficiary of a policy purchased or acquired as an employment benefit.

F. "Union card": In order to obtain a union card, one must be admitted to a union and pay union dues in order that the "union card" be "current" and "valid."

G. "Professional association card": In order to obtain a professional association card, one must first have possessed sufficient resources to enter a profession and then pay dues to a professional association so that the "professional association card" is "current" and "valid."

26. Requiring voters to posses and produce any document the prerequisite for which is a level of affluence is unconstitutional and a violation of the equal protection of the law in the exercise of the fundamental right to vote. ***Harper v. Virginia Board of Elections,*** 383 U.S. 663 (1966).

27. Requiring voters to travel to the City Clerk's office to present other forms of identification or to execute an affidavit as to their identity, as an alternative to producing

at the polling place unconstitutional forms of personal identification, and thus surrendering one's right to be free from unconstitutional burdens on the right to vote, does not save the Voter I.D. Amendment from constitutional invalidity and is, itself, an undue, discriminatory and unconstitutional deprivation of equal protection of the law in the exercise of the fundamental right to vote.   ***Harman v. Forssenius,*** 380 U.S. 528 (1965).

28.  The specific forms of identification required as a precondition to obtaining a clerk-issued photographic identification, individually and in the required combination, is an unconstitutional burden on the exercise of the right to vote because the specified forms of identification either require demonstration of some level of affluence or are available only to men, as is the case with the designation of a selective service card as an acceptable identification document.

29.  By requiring two forms of identification that "show the name and address of the voter" as a precondition for obtaining a voter identification card from the City Clerk, the Voter I.D. Amendment explicitly discriminates against the homeless or other less fortunate persons who lack sufficient financial resources to secure a residence with an address. Even a library card may not be obtained without prior proof of a residence with an address (in fact, a photographic i.d. is required). The only form of gender-neutral identification designated which does not require demonstration of any level of affluence—a social security card—itself fails to meet the requirement of the Voter I.D. Amendment that the document display the voter's address, thus making it impossible to meet the Voter I.D. Amendment's requirements to obtain a city issued identification

without having a level of affluence sufficient to obtain two of the required forms of underlying identification.  As stated in paragraph 27. *supra,* the alternative of personally traveling to the Clerk's office to swear out an affidavit to one's identity does not save the Voter I.D. Amendment from its state of unconstitutionality and is itself an unconstitutional condition that may not be imposed upon the fundamental right to vote.

WHEREFORE Plaintiffs pray this Court to:

a. Declare the Voter I.D. Amendment to be unconstitutional, illegal, null and void;

b. Enjoin Defendant, or persons acting under her supervision and direction, from implementing, administering and enforcing the Voter I.D. Amendment;

c. Award Plaintiffs their reasonable attorney fees under 42 U.S.C. §1988, costs and interest as allowed by law; and

d. Grant Plaintiffs such other and further relief to which they may be entitled and which is necessary to give full effect to the Court's order.

COUNT III

Violation of the Civil Rights Act of 1964,<br>42 U.S.C. §§ 1971(a)(2)(A)

30.  Plaintiffs incorporate by reference the allegations of paragraphs 1 through 29 as though fully restated herein.

31.  The Voter I.D. Amendment violates the Civil Rights Act of 1964, 42 U.S.C. §§ 1971(a)(2)(A), which provides:

No person acting under color of law shall –
(A) in determining whether any individual is qualified under State law

or laws to vote in any election, apply any standard, practice, or procedure different from the standards, practices, or procedures applied under such law or laws to other individuals within the same county, parish, or similar political subdivision who have been found by State officials to be qualified to vote....

32. The Voter I.D. Amendment violates 42 U.S.C. §§ 1971(a)(2)(A) because it applies different standards to qualified voters who vote in person than it does to qualified voters who vote by absentee ballot. In effect, the Voter I.D. Amendment imposes additional qualifications (e.g. passing a New Mexico driver's examination and paying for a valid current driver's license, having credit sufficient to receive a commercial transaction card, belonging to a professional organization or union, etc.) upon the right to vote for those voters who vote in person than required of voters who vote by absentee ballot.

WHEREFORE Plaintiffs pray this Court to:

a. Declare the Voter I.D. Amendment to be unconstitutional, illegal, null and void;

b. Enjoin Defendant, or persons acting under her supervision and direction, from implementing, administering and enforcing the Voter I.D. Amendment;

c. Award Plaintiffs their reasonable attorney fees 42 U.S.C. §§ 1973*l*(e) and 1988, costs and interest as allowed by law; and

d. Grant Plaintiffs such other and further relief to which they may be entitled and which is necessary to give full effect to the Court's order.

COUNT IV

Violation of the Civil Rights Act of 1964,

<u>42 U.S.C. §1971(a)(2)(B)</u>

33. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 32 as though fully restated herein.

34. The Voter I.D. Amendment also violates the Civil Rights Act of 1964, 42 U.S.C. § 1971 (a)(2)(B), which provides:

> No person acting under color of state law shall –
> (B) deny the right of any individual to vote in any election because of
> an error or omission on any record or paper relating to any application,
> registration, or other act requisite to voting, if such error or omission
> is not material in determining whether such individual is qualified
> under State law to vote in such election....

35. The Voter I.D. requirement violates 42 U.S.C. § 1971 (a)(2)(B) because it denies individuals who are fully qualified and lawfully registered to vote in person the right to vote based solely on whether they possess with them when they go to the polls the required personal photo identification, particularly when their identity can be confirmed by other means, including but not limited to asking them for their birth date or the last four digits of their social security number, which is all that is required of absentee voters.

WHEREFORE Plaintiffs pray this Court to:

a. Declare the Voter I.D. Amendment to be unconstitutional, illegal, null and void;

b. Enjoin Defendant, or persons acting under her supervision and direction, from implementing, administering and enforcing the Voter I.D. Amendment;

c.  Award Plaintiffs their reasonable attorney fees under the 42 U.S.C. §§ 1973*l*(e) and 1988, costs and interest as allowed by law; and

d.  Grant Plaintiffs such other and further relief to which they may be entitled and which is necessary to give full effect to the Court's order.

COUNT V

Section 2 of the Voting Rights Act of 1965
<u>42 U.S.C. § 1973(a)</u>

36.  Plaintiffs incorporate herein by reference the allegations of paragraphs 1 through 35 inclusive.

37.  Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973(a), provides:

> (a)  No voting qualification or prerequisite to voting or standard practice or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color.

38.  Upon information and belief, non-white voters of Albuquerque, specifically Hispanic and Native American voters, are less likely than white Albuquerque voters to have the forms of photographic identification specified and required by the Voter I.D. Amendment.

39.  Upon information and belief, non-white voters of Albuquerque, specifically Hispanic and Native American voters, are less likely than white Albuquerque voters to vote by mail-in absentee ballot and thus are more likely to be subjected to the additional photographic identification requirements, burdens and qualifications imposed on those who vote in person.

16

40. The Voter I.D. Amendment requiring possession of a specified acceptable form of photographic identification in order to vote and have one's vote counted is a qualification or prerequisite to voting or a standard, practice or procedure that will result in the denial or abridgment of the right of non-white voters to vote on account of race or color in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973(a).

WHEREFORE Plaintiffs pray this Court to:

a. Declare the Voter I.D. Amendment to be unconstitutional, illegal, null and void;

b. Enjoin Defendant, or persons acting under her supervision and direction, from implementing, administering and enforcing the Voter I.D. Amendment;

c. Award Plaintiffs their reasonable attorney fees under the 42 U.S.C. §§ 1973*l*(e) and 1988. costs and interest as allowed by law; and

d. Grant Plaintiffs such other and further relief to which they may be entitled and which is necessary to give full effect to the Court's order.

COUNT VI

Violation of Plaintiffs' First Amendment Rights.

41. Plaintiffs incorporate herein by reference the allegations of paragraphs 1 through 40, inclusive, as though fully restated herein.

42. The act of voting is an act of speech protected by the First Amendment to the United States Constitution.

43. The Voter I.D. Amendment unconstitutionally burdens the exercise of the right to vote and the act of voting by creating two classes of voters subject to different

qualifications and giving election day officials vague, unconstrained and unreviewable discretion in determining who may and may not vote.

a. The Voter I.D. Amendment discriminates against and burdens the exercise of the right to vote of persons who choose to cast a fully informed vote at the end of the election campaign by voting on election day rather than cast an uninformed or less-informed vote by voting early by absentee ballot.

b. The Voter I.D. Amendment burdens the exercise of the First Amendment right in voting by granting to election day officials unbridled discretion in determining who may and may not vote. The Voter I.D. Amendment does this by requiring voters to present at the polls a "current valid" photographic identification. But these terms are nowhere defined in the Voter I.D. Amendment. The lack of definition of these key terms leaves to the discretion of election officials the determination of which persons, regardless of their actual qualifications to vote, will be permitted to vote, thus permitting arbitrary and erratic enforcement.

c. The Voter I.D. Amendment leaves solely to the subjective and unreviewable discretion of polling place officials the determination of whether the photographic identification offered by a voter sufficiently matches their physical appearance to permit them to vote, thus permitting and encouraging arbitrary and erratic enforcement. By contrast, those persons who choose to vote before receiving all the information available through the full length of an election campaign, are not forced to undergo such subjective treatment or risk being turned away from the polls because a polling place official makes

the subjective determination that the photograph presented by the voter does not

sufficiently match their physical appearance at the time of voting.

44. Because of these burdens on the exercise of the right to vote, the arbitrary and

erratic enforcement permitted by the vagueness of the terms of the Voter I.D.

amendment, and the subjective discretion granted to polling place officials to determine

who may and not vote, the Voter I.D. Amendment violates the First Amendment to the

United States Constitution.

WHEREFORE Plaintiffs pray this Court to:

a. Declare the Voter I.D. Amendment to be unconstitutional, illegal, null and

void;

b. Enjoin Defendant, or persons acting under her supervision and direction, from

implementing, administering and enforcing the Voter I.D. Amendment;

c. Award Plaintiffs their reasonable attorney fees under the 42 U.S.C. §§ 1973*l*(e)

and 1988, costs and interest as allowed by law; and

d. Grant Plaintiffs such other and further relief to which they may be entitled and

which is necessary to give full effect to the Court's order.


Respectfully submitted,

JOSEPH P. KENNEDY
SHANNON L. OLIVER
KENNEDY & OLIVER, P.A
1000 Second St. NW
Albuquerque, NM 87104-1138
505-244-1400
F: 505-244-1406

kolawjpk@qwest.net
Cooperating Attorneys for the NM
Civil Liberties Foundation


GEORGE BACH
Staff Attorney
ACLU of New Mexico
P.O. Box 566
Albuquerque, NM  87103-5916
505-243-0046
F: 505-266-5916
gbach@ACLU-NM.org


SCOTT CAMERON
P.O. Box 37351
Albuquerque, NM  87176
505-331-0252
F: 505-266-5916
pelescott@juno.com
Cooperating Attorney for the NM
Civil Liberties Foundation

JAMES R SCARANTINO
1410 Coal SW #110
Albuquerque, NM  87104
505-242-6724
F:  505-266-5916
jrscarantino@yahoo.com
Cooperating Attorney for the NM
Civil Liberties Foundation

COUNSEL FOR PLAINTIFFS

# CITY of ALBUQUERQUE
## SIXTEENTH COUNCIL

COUNCIL BILL NO.  R-05-295      ENACTMENT NO. R-2005-099

SPONSORED BY:   Sally Mayer

1          RESOLUTION

2  ADOPTING A PROPOSITION TO BE SUBMITTED TO THE VOTERS AT THE

3  NEXT MUNICIPAL ELECTION CONCERING A PHOTO VOTER IDENTIFICATION

4  REQUIREMENT FOR ALBUQUERQUE MUNICIPAL ELECTIONS, PROVIDING

5  FOR ISSUANCE OF VOTER PHOTO IDENTIFICATION CARDS, PROVIDING FOR

6  PROVISIONAL BALLOTS AND DESIGNATING THE TIME FOR CERTIFICATION

7  OF ELECTION RESULTS.

8          WHEREAS, the integrity of the voting process is essential for the public to

9  have confidence in the election process; and

10          WHEREAS, present law has no general requirement for presenting a photo

11  identification when voting so as to prevent voting fraud; and

12          WHEREAS, Louisiana, South Carolina, South Dakota, Florida, Indiana and

13  Hawaii currently require voters to provide photo identification before he or she

14  may vote; and

15          WHEREAS, the use of photo voter identification will help to eliminate the

16  fraudulent voter registration that exists in Albuquerque and prevent vote from

17  becoming fraudulent as shown by these 2004 examples:

18  1.      A community organization admitted that one of its employees

19  submitted falsified voter registrations forms for a 13-year-old boy and a 15-

20  year-old neighbor;

21  2.      A voter registration card arrived in the name of a resident's father

22  who had been dead for two and one-half years;

23  3.      The Albuquerque Police Department's Gang Unit, while executing a

24  search warrant, found voter registration forms.  The occupant admitted to

25  being paid to have people fill out these forms;

[+ Bracketed/Underscored Material +] - New
[-Bracketed/Strikethrough Material-] - Deletion

1

1    4.    Voter Registration cards were turned in to the County Clerk

2    containing faulty or no addresses, no social security numbers and bogus

3    signatures. The Bernalillo County Clerk estimated that the County had 3,000

4    voter registration cards with problems that may have rendered them invalid;

5    and

6    WHEREAS, requiring all voters to show photo identification eliminates the

7    possibility of having a person's vote stolen by an impostor, as was the case

8    with at least one Albuquerque citizen in the 2004 election; and

9    WHEREAS, voting is one of our most important rights and no one should

10   lose that right through the fraudulent behavior of another.

11   BE IT RESOLVED BY THE COUNCIL, THE GOVERNING BODY OF THE CITY OF

12   ALBUQUERQUE:

13   Section 1. The City Clerk is instructed to place the following proposal on

14   the next municipal election ballot, October 4, 2005, and the qualified voters of

15   the City of Albuquerque shall be permitted to vote "for" or "against" the

16   following proposal:

17                          PROPOSITION

18   Amending the Election Code of the Albuquerque City Charter creating a new

19   Section to provide the following:  When a voter approaches the election

20   polling place seeking to vote, the voter must identify himself or herself audibly

21   by name.  The Municipal Election Clerk shall locate in the election rolls the

22   name spoken and ask the individual seeking to vote for one current valid

23   identification card containing the voter's name and photograph. Such photo

24   identification card may include any card issued by a government agency,

25   driver's license, student identification card, commercial transaction card such

26   as a credit or debit card, insurance card, union card, a professional

27   association card or the voter identification card issued by the City Clerk. If the

28   individual is unable to provide a photo identification card, he or she shall be

29   allowed to vote on a provisional ballot, but only if he or she swears or affirms

30   under penalty of perjury in an affidavit provided by the City Clerk that he or

31   she is the registered voter listed on the voter registration rolls at the precinct

32   at which he or she presented himself or herself to vote and provides his or her

33   date of birth and the last four digits of his or her social security number.

[+ Bracketed/Underscored Material +] - New
[- Bracketed/Strikethrough Material -] - Deletion

2

1    Provisional ballots shall be issued for no other reason than the failure to

2    present photo identification.   Provisional ballots shall be counted only by the

3    Municipal Canvassing Board and only upon the voter's presentation to the

4    City Clerk within the ten day canvassing period one of the photo identification

5    cards described in this section.   The Municipal Canvassing Board shall also

6    verify that the voter who cast the provisional ballot was registered to vote for

7    the election and did not vote elsewhere in the same election.   If a voter who

8    cast a provisional ballot under this section swears or affirms under penalty of

9    perjury in an affidavit provided by the City Clerk within the ten day canvassing

10    period that he or she has a religious objection to being photographed, such

11    voter shall not be required to submit photo identification.   The Municipal

12    Canvassing Board shall otherwise verify that the provisional ballot was valid.

13    The City Clerk shall develop and provide instructions for elections judges

14    concerning the requirements of this Section and a method of complaint and

15    resolution for individuals who feel they have been discriminated against by

16    election officials' or the City Clerk's administration of this Section, in

17    accordance with federal intimidation guidelines.   Knowingly executing a false

18    statement constitutes perjury as provided in Section 30-25-1 NMSA 1978 and

19    voting on the basis of a falsely executed statement constitutes false voting as

20    provided in Section 1-20-8 NMSA 1978. Voter photo identification cards shall

21    be issued by the City Clerk without charge to any voter who presents any two

22    of the following identification documents that show the name and address of

23    the voter: a state issued identification card, social security card, student

24    identification card, library card, insurance card, selective service card, union

25    card, professional association card, utility bill, bank statement, government

26    check or a paycheck.   If the individual is unable to present any two of these

27    documents to the City Clerk, then the voter shall swear or affirm in writing

28    under penalty of perjury that he or she is the registered voter and shall be

29    issued a voter photo identification card upon confirmation with the County

30    Clerk that such person is presently registered to vote.   The City Clerk issued

31    voter photo identification card shall state on its face that it shall not be valid

32    for identification other than for the purpose of voting in City Elections and

33    shall not be valid if the voter is subsequently purged from the voter rolls.

[+ Bracketed/Underscored Material +] - New

[- Breeketed/Strikethrough Material -] - Deletion

3

1    The Municipal Canvassing Board shall certify the results of the Municipal

2    Election by the end of the tenth day after the day on which the election is held.

3    Pursuant to Article II, Section 2 (b) of the City Charter, this Section shall take

4    precedence over the State Municipal Election Code. The provisions of this

5    Section shall apply only to City of Albuquerque Municipal Elections.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32    X:\SHARE\Legislation\Sixteen\R-295fin.doc

33

[+ Bracketed/Underscored Material +] - New
[-Bracketed/Strikethrough Material-] - Deletion

4

1   PASSED AND ADOPTED THIS ___20th___ DAY OF ___June___2005

2   BY A VOTE OF:___5___ FOR___2___AGAINST.

3

4           Yes: 5

5           No: Griego, Heinrich

6           Excused: Gomez, O'Malley

7

8

9

10          *Brad Winter*

11          **Brad Winter, President**

12          **City Council**

13

14

15

16   APPROVED THIS ___23rd___ DAY OF ___June___, 2005

17

18

19   <u>**Bill No. R-05-295**</u>

20

21          *Jane B. Lewis for Martin J Chavez*

22          **Martin J. Chavez, Mayor**

23          **City of Albuquerque**

24

25

26

27   **ATTEST:**

28

29          *Judy D. Gibney*

30   **City Clerk**

31

32

33

[ + Bracketed/Underscored Material + ] - New
[ -Bracketed/Strikethrough Material- ] - Deletion

5