FILED
United States Court of Appeals
Tenth Circuit

**November 17, 2008**

**Elisabeth A. Shumaker**
Clerk of Court

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## TENConsistent TENTH CIRCUIT

---

THE AMERICAN CIVIL LIBERTIES
UNION OF NEW MEXICO,

    Plaintiff,

and

THE LEAGUE OF WOMEN VOTERS
OF ALBUQUERQUE/BERNALILLO
COUNTY, INC.; SAGE COUNCIL;
NEW MEXICO COALITION TO END
HOMELESSNESS; ANNE KASS;
ALEXANDRA KAZARAS;
BARBARA GROTHUS,

    Plaintiffs - Appellees,

v.

MILLIE U. SANTILLANES,
Albuquerque City Clerk,

    Defendant - Appellant.

------------------------

THE BRENNAN CENTER FOR
JUSTICE AT NEW YORK
UNIVERSITY SCHOOL OF LAW,

    Amici Curiae.

No. 07-2067

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-05-1136-MCA-WDS)**

---

Michael Garcia, Assistant City Attorney (Robert M. White, City Attorney, Robert D. Kidd, Paula I. Forney, and Mark Shoesmith, Assistant City Attorneys of City of Albuquerque, with him on the briefs), Albuquerque, New Mexico, for Defendant - Appellant.

Charles K. Purcell (Andrew G. Schultz of Rodey, Dickason, Sloan, Akin & Robb, P.A., and George Bach of American Civil Liberties Union of New Mexico, Albuquerque, New Mexico, with him on the briefs), Albuquerque, New Mexico, for Plaintiffs - Appellees.

Sidney S. Rosdeitcher and J. Adam Skaggs of Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P., New York, New York, Wendy R. Weiser and Justin Levitt of the Brennan Center for Justice at New York University School of Law, John W. Boyd of Freedman, Boyd, Daniels, Hollander, Goldberg & Ives, P.A., Albuquerque, New Mexico, for Amici Curiae.

---

Before **KELLY**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Defendant-Appellant, the Albuquerque City Clerk ("City"), appeals from the district court's judgment in favor of Plaintiffs-Appellees granting them declaratory and injunctive relief. In 2005, the City passed an amendment to its charter requiring voters in municipal elections to present photo identification at polling locations. On summary judgment, the district court held that the amendment violated the federal constitutional guarantee of equal protection. It

then entered a final order declaring the amendment unconstitutional and enjoining

the City and its agents from enforcing the amendment in future elections.  ACLU

v. Santillanes, 506 F. Supp. 2d 598, 645-46 (D.N.M. 2007); Aplt. App. 711.  After

the district court entered its final order, the Supreme Court decided Crawford v.

Marion County Election Board, 128 S. Ct. 1610 (2008), significantly clarifying

the legal landscape.  Our jurisdiction arises under 28 U.S.C. § 1291, and we

reverse.

Background

In October 2005, the voters of Albuquerque approved an amendment to the

Albuquerque City Charter to require photo identification for in-person voters in

all municipal elections.  See Albuquerque, N.M., City Charter, art. XIII, § 14 (as

amended Oct. 4, 2005); Aplt. App. 121-24.  As stated in the City Council bill

submitting the amendment to the voters, the purpose of the amendment is to

prevent voter fraud, specifically identity impersonation at polling locations.  Aplt.

App. 121-22.  The amendment provides numerous examples of acceptable forms

of photo identification: "any card issued by a government agency, driver's

license, student identification card, commercial transaction card such as a credit

or debit card, insurance card, union card, a professional association card or the

voter identification card issued by the City Clerk."  Aplt. App. 122.  If a voter

does not have an identification card, the amendment provides that a voter may

cast a provisional ballot at the polling location after completing a clerk-supplied affidavit as to identity, date of birth, and the last four digits of a social security number.  Aplt. App. 122.  The vote will then be counted once the individual presents photo identification to the city clerk within ten days of the election date.  Aplt. App. 123.  Additionally, the city clerk provides free photo identification cards at any time, including on the day of an election and during the ten-day period following an election.  Aplt. Br. at 5.  The law, however, does not cover absentee voters because it is intended specifically to address the fraud and impersonation that may result from in-person voting.

In a six-count complaint, Plaintiffs contended that the amendment violated the First and Fourteenth Amendments, the Civil Rights Act of 1964, and the Voting Rights Act of 1965.  Aplt. App. 101-20.  By stipulation of the parties, the district court dismissed all but the equal protection and First Amendment claims contained in counts I and VI.  Aplt. App. 293.  Following discovery, both parties filed cross motions for summary judgment.  Aplt. App. 172, 294.  On February 12, 2007, the district court granted summary judgment in favor of Plaintiffs on the equal protection claim and in favor of Defendants on the First Amendment claim.  Santillanes, 506 F. Supp. 2d at 645-46.  This appeal followed.

After the district court opinion, but prior to oral argument in this case, the Supreme Court decided Crawford.  The Court upheld an Indiana photo identification requirement, similar to Albuquerque's, against a facial equal

- 4 -

protection challenge.  <u>Crawford</u>, 128 S. Ct. at 1613-15.  The Indiana law required all in-person voters to present a government-issued photo identification.  In the lead opinion, joined by Chief Justice Roberts and Justice Kennedy, Justice Stevens rejected the facial challenge to the law.  Justice Stevens reaffirmed the Court's earlier decisions, including <u>Burdick v. Takushi</u>, 504 U.S. 428 (1992), which held that the appropriate standard for evaluating constitutional challenges to a regulation affecting the right to vote is to balance the restrictions imposed by the regulation against its justifications.  <u>Crawford</u>, 128 S. Ct. at 1616.  In a concurring opinion joined by Justice Thomas and Justice Alito, Justice Scalia held that any burden imposed by the photo identification law was "minimal and justified" without regard to any individual effects of the provision on certain voters.  <u>Id.</u> at 1624.  According to Justice Scalia, the law "is a generally applicable, nondiscriminatory voting regulation," and "[t]he burden of acquiring, possessing, and showing a free photo identification is simply not severe" in comparison to the usual burdens associated with voting.  <u>Id.</u> at 1625, 1627.  Nevertheless, under Justice Stevens's opinion, the Court balanced "the asserted injury to the right to vote against the precise interests put forward by the State as justifications for the burden imposed by its rule."  <u>Id.</u> at 1616.  (internal quotation marks omitted).  After a detailed weighing of the burdens imposed by the law, the justifications for the law, and the accommodations made for particularly situated voters, Justice Stevens held that the burden of presenting photo identification at a

polling place imposes only a "'limited burden on voters' rights,'" id. at 1623

(quoting Burdick, 504 U.S. at 439), and that the justifications for Indiana's law

were both neutral and sufficiently strong to uphold the law.  Id. at 1624.


<u>Discussion</u>

We review a district court's grant of summary judgment de novo, applying

the same standards as the district court.  Timmerman v. U.S. Bank, N.A., 483

F.3d 1106, 1112-13 (10th Cir. 2007).  Summary judgment is appropriate when

"the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  We view the

facts in the light most favorable to the nonmoving party.  Scott v. Harris, 127 S.

Ct. 1769, 1774-75 (2007).

On appeal, the City argues that the district court erred in holding: (1) that

the Plaintiffs had standing to challenge the voter identification law, and (2) that

the law violates equal protection.  Concerning the second argument, the City

argues that (a) the law properly distinguishes between in-person and absentee

voters, (b) the district court erred in applying a heightened standard of review, (c)

the "current valid" photo identification requirement is not unconstitutionally

vague, (d) the Help America Vote Act (HAVA) and the 2005 amendments to New

Mexico's election code concerning voter identification do not conflict with the

law, (e) the City was not required to show that the State failed to comply with HAVA prior to imposing the law, and (f) the district court's other justifications should be rejected.

I. <u>Standing</u>

Standing is part of Article III's "case or controversy" requirement. An individual plaintiff must meet three elements to establish standing: (1) injury in fact, (2) causation, and (3) redressibility. <u>Davis v. Fed. Election Comm'n</u>, 128 S. Ct. 2759, 2768 (2008). A plaintiff must have suffered "an injury in fact," defined as the "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). A plaintiff must also show a "causal connection between the injury and the conduct." <u>Lujan</u>, 504 U.S. at 560. And finally, a plaintiff must demonstrate that it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Id.</u> at 561 (internal quotation marks and citations omitted). An organizational plaintiff must additionally demonstrate that "its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." <u>Friends of the Earth, Inc., v. Laidlaw Envtl. Svcs. (TOC), Inc.</u>, 528 U.S. 167, 181 (2000).

We review questions of standing de novo.  <u>Nova Health Sys. v. Gandy</u>, 416

F.3d 1149, 1154 (10th Cir. 2005).  "At the summary judgment stage, the plaintiff

must set forth by affidavit or other evidence specific facts that, if taken as true,

establish each of these elements." <u>Id.</u> (citing <u>Lujan</u>, 504 U.S. at 561).

Furthermore, standing is determined at the outset of litigation.  <u>Id.</u>

Three individuals and three organizations are plaintiffs.  The individual

Plaintiffs, Ann Kass, Alexandra Kazaras, and Barbara Grothus, live in

Albuquerque and intend to vote in future municipal elections.  Aplt. App. 105, ¶

7.  The organizational Plaintiffs include the League of Women Voters of

Albuquerque/Bernalillo County, Inc., SAGE Council, and the New Mexico

Coalition to End Homelessness.[1]  The League of Women Voters is a non-profit

organization that engages in various voter education programs and consists of

individuals who are registered to vote and do vote in local elections.  Aplt. App.

102, ¶ 2; <u>see also</u> <u>Santillanes</u>, 506 F. Supp. 2d at 606.  SAGE Council is an

organization dedicated to protecting the voting rights of Native Americans and

conducts activities to educate and increase participation among Native American

voters.  Aplt. App. 102-03, ¶ 3; <u>see also</u> <u>Santillanes</u>, 506 F. Supp. 2d at 606.

Finally, the New Mexico Coalition to End Homelessness is a non-profit

---

[1]  Initially, the American Civil Liberties Union of New Mexico
("ACLUNM") was a party to the action.  Aplt. App. 101, ¶ 1.  However, in a
stipulated dismissal, the ACLUNM voluntarily dismissed all of its claims.  Applt.
App. 163-65.

organization dedicated to serving, representing, and advocating for the homeless. Aplt. App. 103, ¶ 4; see also Santillanes, 506 F. Supp. 2d at 606. Some of the Coalition's members focus on registering homeless individuals to vote. Aplt. App. 103, ¶ 4; see also Santillanes 506 F. Supp. 2d at 606.

Plaintiffs have presented evidence that they and their members intend to vote in-person in future elections. See Aplt. App. 340-42. They contend that the individual Plaintiffs possess photo identifications that may or may not be deemed current or valid by an Albuquerque election official. Aplt. App. 351-53. For example, some of the Plaintiffs do not have photo identifications that match their current physical appearance, and another Plaintiff has an out-of-state driver's license. See Aplt. App. 407, ¶ 4 (Grothus Aff.); Aplt. App. 413-14, ¶¶ 9-11 (Kazaras Aff.). Additionally, the New Mexico Coalition to End Homelessness maintains that homeless populations have a particularly difficult time obtaining and keeping photo identification. Aplt. App. 253 (Hughes Dep.).

As in many cases challenging aspects of voting, Plaintiffs cannot identify a single individual who would not vote, let alone not vote in-person because of the measure. See, e.g., Crawford v. Marion County Election Bd., 472 F.3d 949, 951-52 (7th Cir. 2007), aff'd, 128 S. Ct. 1610 (2008); Stewart v. Blackwell, 444 F.3d 843, 855 (6th Cir. 2006), vacated as moot, 473 F.3d 692 (6th Cir. 2007); Sandusky County Democratic Party v. Blackwell, 387 F.3d 565, 574 (6th Cir. 2004) (per curiam). We agree with the City that the fact that Plaintiffs might be

personally offended by the requirement of showing photo identification or philosophically opposed to it is insufficient to confer standing.  Aplt. Br. at 52. As far as we can tell, no individual lacks photo identification, although the individual Plaintiffs suggest that the photo identification that they do have will confound election judges, potentially result in arbitrary enforcement of the requirement, and result in unequal treatment as compared to those who vote absentee (where there is no such requirement).

Standing is not a proxy for ruling on the merits and is determined at the outset of the lawsuit.  See Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) ("Our threshold inquiry into standing 'in no way depends on the merits of the [petitioner's] contention that particular conduct is illegal,'" (quoting Warth v. Seldin, 422 U.S. 490, 500 (1975)) (alteration in original)); H.L. v. Matheson, 450 U.S. 398, 430 (1981) ("[S]tanding is a jurisdictional issue, separate and distinct from the merits[.]").  Though many of the burdens identified by the Plaintiffs now have a different legal significance given the Supreme Court's decision in Crawford, we are satisfied that, at the outset of this litigation, the evidence supporting the Plaintiffs' claim of unequal treatment of in-person voters vis-à-vis absentee voters is sufficient injury to confer standing, and the relief requested would solve the perceived problem.  The injury in fact is the denial of equal treatment.  Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. Jacksonville, 508 U.S. 656, 666 (1993).  Although the City argues that the bases

identified by the district court to show injury are speculative or non-existent,

Aplt. Br. at 53-57, the fact remains that the individual Plaintiffs will still be

required to present photo identification that must be accepted if they vote in-

person whereas those voting absentee will not.  Because standing exists at least

for purposes of the individual Plaintiffs and the equal protection claim, we now

turn to the merits.  See Crawford, 472 F.3d at 951 (where only injunctive relief

sought, only one plaintiff must demonstrate standing).

II.  Equal Protection

The Equal Protection Clause of the Fourteenth Amendment states that "[n]o

State shall . . . deny to any person within its jurisdiction the equal protection of

the laws."  U.S. Const. amend. XIV, § 1.

> Unless a statute being challenged on equal protection grounds
> "jeopardizes exercise of a fundamental right or categorizes on the
> basis of an inherently suspect characteristic," it will be "presumed to
> be valid and will be sustained if the classification drawn by the
> statute is rationally related to a legitimate state interest."

Coal. for Equal Rights, Inc. v. Ritter, 517 F.3d 1195, 1199 (10th Cir. 2008)

(quoting Nordinger v. Hahn, 505 U.S. 1, 10 (1992), and City of Cleburne v.

Cleburne Living Ctr., 473 U.S. 432, 440 (1985)) (internal citations omitted).  As

the Supreme Court recently confirmed in Crawford, the appropriate test when

addressing an Equal Protection challenge to a law affecting a person's right to

vote is to "weigh the asserted injury to the right to vote against the precise

interests put forward by the State as justifications for the burden imposed by its

rule." <u>Crawford</u>, 128 S. Ct. at 1616 (internal quotation marks omitted).  The City raises several arguments for why the district court erred in holding that the law violates equal protection.  We address each argument in turn.

    A.  <u>The law properly distinguishes between in-person and absentee voters</u>

The City first argues that the law properly distinguishes between in-person and absentee voters.  Although the district court ostensibly restricted its equal protection analysis to the treatment among in-person voters, 506 F. Supp. 2d at 631, it also found that the risk of impersonation was far greater with absentee voting procedures and that tended to undermine the City's rationale for the measure, <u>id.</u> at 639.  Plaintiffs contend on appeal that the Albuquerque law creates an arbitrary distinction between in-person and absentee voters by only requiring in-person voters to present photo identification.  They argue that because any registered voter in Albuquerque may choose to vote absentee, N.M. Stat. § 3-9-3(A) (1999), unlike Indiana where only certain classes of individuals are eligible to vote absentee, there is greater opportunity for "mischief" creating a greater need to treat all voters alike.  Aplee. Supp. Br. at 7.  Further, Plaintiffs argue that absentee voters who ultimately present their ballots in-person will not be subject to the photo identification requirement.  Aplee. Supp. Br. at 8.  Plaintiffs claim that such different treatment of absentee persons who vote in-person from non-absentee in-person voters is without justification.  We must disagree.

Absentee voting is a fundamentally different process from in-person voting, and is governed by procedures entirely distinct from in-person voting procedures. See Ind. Democratic Party v. Rokita, 458 F. Supp. 2d 775, 830-31 (S.D. Ind. 2006) ("absentee voting is an inherently different procedure from in-person voting"), aff'd sub nom. Crawford v. Marion County Election Bd., 472 F.3d 949 (7th Cir. 2007), aff'd, 128 S. Ct. 1610 (2008).  Although the district court distinguished Rokita on the basis that Indiana law was more restrictive on who was eligible to vote absentee, the fact remains that nothing suggests that absentee ballot fraud would be limited by a photo-identification requirement that applied to absentee voting.  See Crawford, 472 F.3d at 954.  As the City argues, "[w]hile requiring absentee voters to enclose a copy of photo identification with their ballots would provide election officials with a trustworthy source to establish a link with the name of the registered voter, the absence of a person standing before election officials precludes linking the enclosed identification with the person actually casting the ballot."  Aplt. Br. at 12-13.  Furthermore, the unique procedures for absentee voting allow for a separate process confirming the identification of a voter.  See, e.g., N.M. Stat. § 3-9-4 (2003) (requiring an absentee voter to fill out an application with personal identification information).  Because all registered voters in Albuquerque have the option of voting in-person or by absentee ballot, voters may choose which set of procedures to follow.

Thus we are unpersuaded by Plaintiffs' argument that the law treats

absentee voters who ultimately cast their ballot in-person differently than non-absentee in-person voters.  Aplee. Supp. Br. at 8.  The law clearly applies to all in-person voters at polling locations, and therefore we read the law to require any person, including a voter who applied for an absentee ballot but later votes in-person due to not receiving an absentee ballot, to present photo identification. Further, individuals who obtained an absentee ballot and merely arrive in-person to drop off the ballot at the city clerk's office have already subjected themselves to the separate absentee voter procedures necessary to confirm the voter's identification.

Additionally, we recognize that states have wide latitude in determining how to manage election procedures.  See Buckley v. Am. Constitutional Law Found., Inc., 525 U.S. 182, 191 (1999) ("States...have considerable leeway to protect the integrity and reliability of . . . election processes generally.").  States may also "take reform one step at a time," and need not "cover every evil that might conceivably [be] attacked."  McDonald v. Chicago Bd. of Election Comm'rs, 394 U.S. 802, 809 (1969) (internal quotation marks omitted).  The Albuquerque law is intended to target in-person voters and not all voters, and because there are clear differences between the two types of voting procedures, the law's distinction is proper.

B.  Standard of review

The City next argues that the district court erred in applying a heightened

- 14 -

standard of review.  The district court, after a lengthy discussion of the potential

application of rational basis or strict scrutiny review, settled on the intermediate

scrutiny standard established in Burdick v. Takushi.  See Santillanes, 506 F.

Supp. 2d at 626-30.  Although we find that the district court did identify the

proper test as was confirmed in Crawford, we also find that the district court erred

in its application.

1.   Application of the <em>Burdick</em> test

Crawford confirmed that we must weigh the burdens imposed by a law

affecting a person's right to vote against the justifications supporting the law.

Crawford, 128 S. Ct. at 1616.  Following Crawford, it appears that Justice

Stevens's plurality opinion controls, a position advocated by the Plaintiffs in the

present case because it is the narrowest majority position.  Few commentators

have analyzed the decision; however, some district court opinions analyzing

similar laws have followed Justice Stevens's approach.  For example, in Ray v.

Texas, No. 2-06-CV-385, 2008 WL 3457021, at *1 (E.D. Tex. Aug. 7, 2008), the

Eastern District of Texas upheld a Texas law regulating the use of witnesses who

assist absentee voters in filling out absentee ballots.  Interpreting Crawford as

requiring "specific proof of how a burden imposed by a regulation actually

impacts a given class of voters," the court found that the Plaintiffs had no specific

evidence indicating how the Texas law would negatively affect one's right to

vote.  Id. at *5.  Because the Supreme Court in Crawford reaffirmed the right of a

- 15 -

state to impose reasonable nondiscriminatory restrictions on a person's right to vote, the district court upheld the law.  Id. at *6, *8; see also Fla. State Conference of the NAACP v. Browning, 569 F. Supp. 2d 1237, 1249-51 (N.D. Fla. 2008) (applying the rationale of Justice Stevens's "lead" opinion in upholding a Florida law setting forth verification requirements for first time voters prior to voter registration).

### a.  The burdens imposed by the law

The first prong of this test requires us to consider the alleged injury to the right to vote. Crawford, 128 S. Ct. at 1616.  The district court restricted its Burdick analysis to the burdens imposed on similarly situated voters at polling locations and not the differing burdens imposed on in-person versus absentee voters.  See Santillanes, 506 F. Supp. 2d at 631.  The court held that "the bureaucratic hurdles entailed by the [Albuquerque amendment] may present a substantial obstacle in the path of Albuquerque voters even if they do not amount to a categorical ban on voting." Id. at 633.  According to the district court, one of the most significant hurdles is the difficulty of obtaining valid photo identification for voting purposes, especially in the ten-day time period following a determination that a particular photo identification is deemed invalid. Id. at 635.  The district court was further concerned that the City has not presented plans to inform voters of the new identification requirements, and that because the law only applies to municipal elections and not all elections, voters will be

confused as to when the requirement is applicable.  Id. at 635-36.  In light of

these concerns, the district court concluded that the Albuquerque amendment

"imposes a significant burden on the right to vote."  Id. at 636.[2]

Restrictions that "are generally applicable, even-handed, politically neutral,

and which protect the reliability and integrity of the election process" are

generally not considered severe restrictions and are upheld.  Gonzalez v. Arizona,

485 F.3d 1041, 1049 (9th Cir. 2007) (internal quotation marks omitted).  Here, the

provision is especially even-handed given the alternatives for acceptable photo

identification.  If a voter's particular form of photo identification is considered

invalid, the voter may present another valid form of identification within ten days

at the city clerk's office.  The Albuquerque law provides an extensive list of

examples of acceptable forms of identification, and in most cases a voter will

likely have another form that will be considered acceptable.  Furthermore, for

those who cannot present a second form of photo identification, the individual can

obtain photo identification free of charge from the city clerk's office.

The district court was concerned with the City's failure to establish plans to

_____

[2]  In reaching this conclusion, the district court relied on Buckley, 525 U.S.
182.  Buckley involved a Colorado ballot initiative requiring all individuals
circulating initiative petitions prior to an election to wear identification badges,
be registered voters, and be reported to the state.  Id., at 186.  Buckley, however,
involved matters of "core political speech," id., and was thus a First Amendment
challenge, not an equal protection challenge to a person's right to vote, id. at 186-
87.  The Burdick test had no application in Buckley, and therefore, the Buckley
case cannot lend support to the district court's findings in light of these facts.

inform voters of the new law, and determined that the law's application is confusing.  The City argues that if the district court had not enjoined the City from enforcing the law, it would have had ample time to inform voters of the new photo identification requirement.  Regardless, we think that the degree of voter education, particularly in the absence of any indication that any voters would be or were confused, cannot be an adequate ground to invalidate this provision—our task is not to mandate a perfect system—just one that meets constitutional requirements.  And second, the law clearly states its application to all Albuquerque municipal elections, and nothing suggests that its application is any more confusing than the changing boundaries or precincts that often accompany elections and that voters must accommodate.

Regardless, in <u>Crawford</u>, the Supreme Court concluded that the burdens imposed by a photo identification requirement did not substantially burden the right to vote.  "[A] voter may lose his photo identification, may have his wallet stolen on the way to the polls, or may not resemble the photo in the identification because he recently grew a beard.  Burdens of that sort arising out of life's vagaries, however, are neither so serious nor so frequent as to raise any question about the constitutionality of [the photo identification requirement]." <u>Crawford</u>, 128 S. Ct. at 1620.  The Indiana law also similarly provided for a provisional ballot alternative where a voter could then present valid identification following the election.  <u>Crawford</u>, 128 S. Ct. 1613-14.  Consistent with <u>Crawford</u>, the types

of burdens imposed by the Albuquerque law requiring photo identification arise

out of "life's vagaries" but do not amount to a substantial burden on a person's

right to vote.

> b.  <u>The justifications for the photo identification requirement</u>

We must balance the burdens imposed by the requirement against the

justifications for the law.  The City maintains that, consistent with the stated

findings of the Albuquerque City Council, the photo identification requirement is

intended to prevent voter fraud and in-person impersonation at polling locations.

Aplt. Br. at 4; Aplt. App. 23-24.  The district court concluded that this stated

goal, alone, was insufficient and that the City had failed to meet its burden

because it "presented no evidence of voter fraud or voting irregularities among

Albuquerque voters who vote in-person."  <u>Santillanes</u>, 506 F. Supp. 2d at 615.

The district court concluded that the City "must bear the burden of providing a

reasoned explanation, supported by at least some admissible evidence, to show

the [photo identification requirement] is tailored to advance an important

governmental interest."  <u>Id.</u> at 636.  It noted that the City did not present any

expert testimony concerning the existence of fraud in Albuquerque elections, nor

did it present any evidence regarding other efforts to prevent voter fraud or to

educate the electorate of the new identification requirements.  <u>Id.</u> at 615.  As a

result, it held that the law was "not adequately tailored to meet the City's interest

in preventing voter impersonation fraud at the polls."  <u>Id.</u> at 641.

In requiring the City to present evidence of past instances of voting fraud, the district court imposed too high a burden on the City.  Just as the Supreme Court did not require Indiana to present specific instances of past conduct to justify its photo identification requirement, we do not require Albuquerque to make such a showing.  In Crawford, Indiana presented voter fraud as one of its justifications for its photo identification law, and the Court concluded that such a justification was sufficient.  Crawford, 128 S. Ct. at 1617, 1623.  The Court did not require any showing from Indiana regarding past instances of fraud.  Instead, the Court relied on the existence of "flagrant examples of such fraud in other parts of the country [that] have been documented throughout this Nation's history by respected historians and journalists."  Id. at 1619.  The resolution submitting this measure to a vote echoes those concerns.  Aplt. App. 23.  Prevention of voter fraud and voting impersonation as urged by the City are sufficient justifications for a photo identification requirement for local elections.

C.  The "current valid" photo identification requirement is not unconstitutionally vague

Plaintiffs argue that the amendment is vague and allows for complete discretion of election judges in deciding what suffices as "current" and "valid" photo identification.[3]  The district court agreed with this position, concluding that

_____

[3] This argument was initially raised under the Plaintiff's First Amendment claim.  The district court granted summary judgment in favor of the City as to that claim, but made clear that the argument still applies in the equal protection context.  Santillanes, 506 F. Supp. 2d at 643.

the amendment provides no guidance for the enforcement of these terms.

Santillanes, 506 F. Supp. 2d at 640.  Plaintiffs, as well as the district court, rely

upon conflicting statements made by city officials as to what satisfies the

requirement.  Aplee. Supp. Br. at 11.  Furthermore, Plaintiffs argue that

individuals with identifications that do not present a current address, or where the

picture no longer matches the current physical appearance of the person, will lead

to an arbitrary rejection of the photo identification.  Aplee. Corr. Br. at 50, 53-54.

The amendment merely requires "one current valid identification card

containing the voter's name and photograph."  Albuquerque, N.M., City Charter,

art. XIII, § 14 (as amended Oct. 4, 2005).  The intent of the amendment is

obvious—to match the person who appears to vote with a photo identification.

The amendment then contains a non-exclusive list of photo identification that will

be acceptable, including: government-issued identification, student identification

cards, credit or debit cards, insurance cards, union cards, and/or professional

association cards.  Furthermore, the amendment does not require an address (nor

contain any provision that any address shown on the photo identification match

voting registration records) nor does it require an expiration date.  Although

Plaintiffs argue that the breadth of what will satisfy the requirement will lead to

arbitrary determinations by election judges, we cannot agree.  If anything, such

breadth poses even less of a restriction on voters than does the Indiana law upheld

by the Supreme Court, which required a government- issued photo identification

with an expiration date.

The amendment also accounts for the possibility that a voter may be rejected on the basis of providing invalid photo identification or being unable to present photo identification at all.  The amendment allows such a voter to cast a provisional ballot along with an affidavit of identity.  Id.  The voter must then provide valid photo identification to the city clerk's office within ten days following the election.  In addition to being given a ten-day grace period, voters may also obtain valid photo identification cards from the city clerk's office free of charge.  Id.  Although the district court did not find these alternatives sufficient, see Santillanes, 506 F. Supp. 2d at 635, we disagree.  Perhaps presenting an inconvenience to certain voters, these alternatives would still allow such a vote to be counted and therefore do not amount to a substantial burden on the right to vote.  Most voters will likely be allowed to vote at the polling location upon presenting photo identification.  Although the individuals rejected need to take additional steps to ensure that their votes are counted, such steps merely require filling out an absentee ballot and an affidavit of identity.  They must then make one additional trip to the city clerk's office to present photo identification or to obtain such identification if they do not possess any.  At most, the burden imposed is a single additional trip to the city clerk's office.  This identical burden was presented to the Supreme Court in Crawford, and was not found to be substantial.  See Crawford, 128 S. Ct. at 1621 (noting that the burdens

imposed by Indiana's photo identification law were mitigated by the opportunity
to vote by provisional ballot with a requirement of presenting a valid photo
identification to the clerk's office within ten days).

Finally, the terms "current" and "valid" are used in a variety of other
contexts that lend support to a finding that such terms are not unconstitutionally
vague.  For example, the Help America Vote Act ("HAVA") imposes an
identification requirement for all first time voters.  The law provides that the
voter may present, as one of several types of identification, a "current and valid
photo identification." 42 U.S.C. § 15483(b)(2)(A).  Additionally, New Mexico's
state statutes addressing voter identification requirements employ the terms
"current" and "valid" in addressing the form of photo identification required.  See
N.M. Stat. § 1-4-5.1(I)(4) (2007); N.M. Stat. § 1-1-24 (2005).  We are not
persuaded that these terms are inherently confusing or difficult to apply given the
function of the voter identification amendment: to match the person presenting as
a voter with the identification.

D.  <u>The Albuquerque law does not conflict with HAVA and the 2005
    amendments to the state election code</u>

In reaching its conclusion that the law imposes significant burdens on
voters, the district court found that the Albuquerque amendment conflicts with
provisions of the state election code and HAVA.  <u>Santillanes</u>, 506 F. Supp. 2d at
636.  This is not the case.  HAVA applies to all elections that include election to

federal offices.  <u>See</u> <u>Sandusky</u>, 387 F.3d at 574.  The 2005 amendments to the

New Mexico state election code implement provisions of HAVA and apply to all

statewide elections.  The Albuquerque law, in contrast, only applies to

Albuquerque municipal elections.  Thus, we find no direct conflict or preemption

with federal or state law.

     E.  <u>The City was not required to show that the State failed to comply with</u>
       <u>HAVA prior to imposing the law</u>

     As noted above, in the district court's analysis of the <u>Burdick</u> balancing

test, the court placed too high a burden on the City to justify the law.  The district

court faulted the City for not presenting evidence that the state was not in

compliance with HAVA as a justification for the Albuquerque law.  <u>Santillanes</u>,

506 F. Supp. 2d at 638.  The district court concluded that because there are

federal and state requirements, through HAVA and the state election code, the

City did not demonstrate why this particular photo identification law is needed.

The court then concluded that the City failed to demonstrate how such a law

"serves to combat an existing problem with voter impersonation fraud in

municipal elections."  <u>Id.</u>   As we have noted above, <u>Crawford</u> confirms that such

a showing by the City was not necessary.

     F.  <u>The district court's other justifications should be rejected</u>

     <u>Crawford</u> clearly guides this court in concluding that the Albuquerque

photo identification law is a valid method of preventing voter fraud.  Although

the district court presented a litany of reasons throughout its <u>Burdick</u> analysis for why this law is invalid, it is unnecessary to address them further other than to say that the City simply was not required to enact a provision that was metaphysically certain of eliminating all voter fraud in every conceivable in-person situation, any more than it was required to address (in advance) every situation imagined, no matter how remote. <u>See</u> Crawford, 472 F.3d at 954; Aplt. Br. at 43-47. The court deals in probabilities, not possibilities, which of course explains why evidence on such points is so helpful. None of the district court's concerns are sufficient to distinguish this case from the clear precedent set forth in <u>Crawford</u>.

REVERSED.